UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

──────────────────────────────────

JAMES H. AREGANO,

     Plaintiff,

         v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

     Defendant.

10-CV-00159
(WGY)

──────────────────────────────────

**WILLIAM G. YOUNG, United States District Judge.**[1]

**DECISION and ORDER**

## I.   INTRODUCTION

James Aregano brings this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied his claims for Social Security Supplemental Security Income ("SSI").  Compl., ECF No. 1.

### A.   Procedural Posture

James H. Aregano ("Aregano") applied for SSI on January 26, 2007, alleging disabilities beginning on December 31, 2006.  Admin. R. 87-89.  On January 27, 2007, the Social Security

───────────────

[1] Of the District of Massachusetts, sitting by designation. Reassignment Order, ECF No. 19.

1

Administration field office conducted an in-person interview with Aregano. Id. at 95-108. The interviewer recommended denying disability, but noted that Aregano was "very immature and seemed to have a difficult time concentrating." Id. at 97. "He also had difficulty remembering things." Id. In developing the Work History, the interviewer noted that "due to his condition[,] [Aregano] could not recall all the different jobs he had." Id. at 98. Aregano reported that he cannot remember things and that "[t]hings always seem to become confrontational with employers." Id. at 100. Aregano reported dealing with his illnesses by "chang[ing] jobs often." Id. Aregano appealed his initial denial of disability benefits, and after a hearing and interview via video teleconference, the administrative law judge (the "hearing officer") found Aregano not disabled as there are a significant number of jobs in the national economy that he can perform. Id. at 16-17. Aregano requested a review of the hearing officer's decision, id. at 4-6, and the Social Security Appeals Council denied Aregano's request. Id. at 1-3.

Aregano subsequently filed a complaint appealing the hearing officer's decision in federal district court. Compl. 1. The government filed an answer, ECF No. 11, and both sides filed briefs, Pl.'s Tr. Br., ECF No. 15; Def.'s Opp'n Br. Accordance N.D.N.Y. General Order 18, ECF No. 16. On April 20, 2011, the case was reassigned to this Court. Reassignment Order, ECF No.

2

19.

**B.   Factual Background**

In his request for a hearing, Aregano complained of disabilities related to his car accident, and "mental illness." Admin. R. 54.  Aregano is currently thirty-six years old.  Id. at 87.  In 1996, Aregano suffered a traumatic brain injury as a result of a motor vehicle accident where he was ejected from the vehicle.[2]  Id. at 166.  Initially, he had significant physical and cognitive issues related to the accident, id. at 171, 188, 192-94, but his condition improved with medical treatment, e.g., id. at 195.  He also has an extensive history of alcohol and substance abuse.  Id. at 226-27.

**1.   Physical Impairments**

**a.   Treating Physicians**

On March 11, 2002, a physician at the Oneida Medical Imaging Center examined Aregano's left shoulder, took an MRI, and found "mild impingement of the left [Acromio Clavicular Joint] upon the supraspinatus," but that the shoulder was "otherwise, unremarkable."  Id. at 217 (relating impressions in a letter to Dr. Seelan Newton, M.D., on February 27, 2007).

---

[2] Aregano relates his disabilities to a car accident "which occurred in 1998," although his accident actually occurred in 1996.  Compare Admin. R. 54 with id. at 166.  Aregano's impairments include confusion about dates.  See e.g., id. at 97, 226 (noting problems with memory).

On January 7, 2005, Aregano saw Dr. Seelan Newton, M.D. ("Dr. Newton"), for an allergy attack and swelling of his hand. Id. at 259-60.  Aregano reported a car accident in December 2004 where he injured his left hand.  Id.  Dr. Newton prescribed Naprosyn and Lortab for pain.[3]  Id.  An x-ray taken after the accident showed no obvious fracture, and Dr. Newton recommended a new x-ray to rule out a stress fracture.  Id.  In early April 2005, Aregano twice requested refills for the Lortab but was refused by office staff because he recently received a refill and should have had numerous tablets remaining.  Id. at 256-57.  On April 15, 2005, Dr. Newton examined Aregano and he again noted tenderness in Aregano's left hand, recommending continued use of Lortab tablets.  Id. at 254-55.

On May 22, 2006, Aregano reported to Dr. Keith L. Harden, M.D. ("Dr. Harden"), that he had chronic pain in his left shoulder, left ankle and lower back and requested a Lortab refill.  Id. at 252.  In July 2006, Dr. Newton examined Aregano's right wrist for pain, numbness, and tingling and prescribed a wrist splint, Naprosyn 500 mg, and Lortab as needed.  Id. at 249-50.  Dr. Newton described Aregano's right wrist problem as "likely carpel tunnel syndrome."  Id. at 250.  On August 8, 2006,

---

[3] Lortab is the brand name for a combination of acetaminophon and hydrocodone (an opiate analgesic). Hydrocodone, PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000014/ (last updated July 18, 2011).

Aregano reported no further wrist pain, as he did not work in heavy construction any longer and declined further evaluation for the condition.  Id. at 247

On September 19, 2006, Aregano reported knee pain to a medical practitioner and was prescribed 650 mg of Tylenol three times per day.  Id. at 222.  On January 17, 2007, Dr. Rathika Martyn, M.D. ("Dr. Martyn"), refilled Aregano's prescription medications, gave him one month of Lortab, and asked Aregano to follow up with Dr. Newton.[4]

In February 2007, Dr. Newton saw Aregano several times for chronic pain in his left ankle and left shoulder.  Id. at 238-42. Dr. Newton noted chronic tenderness in the left ankle on his lateral malleolar area and posterior tibial-fibular area, but a fair range of motion with fair flexion, extension and lateral rotation.  Id. at 242.  Aregano reported that his ankle bothered him all of the time, especially when working out.  Id. Similarly, his shoulder pain bothered him especially when weightlifting.  Id.  On February 1, 2007, Dr. Newton prescribed Celebrex, an anti-inflammatory, and Ultram, an opiate agonist for pain.  Id. at 243.  A few days later, a Senior Referral Specialist reportedly received a phone call alleging that Aregano was selling hydrocodone pills.  Id. at 240.  On February 15,

_____

[4] Dr. Martyn's clinical notes indicate that the Lortab for chronic pain was prescribed by Dr. Newton and Dr. Harden.  Admin. R. 245.

2007, Aregano requested a refill for the Lortab and Dr. Newton's office declined as he was two weeks early. Id. at 239.

###### b. Consulting Physician

Dr. Kalyani Ganesh, M.D. ("Dr. Ganesh"), consultatively examined Aregano on March 22, 2007. Id. at 283. Aregano complained to Dr. Ganesh of chronic left ankle pain, a shoulder problem, back pain, and pain in his hands. Id. Aregano reported he was taking hydrocone, and Tylenol with Codeine No. 3 for pain. Id. Aregano reported having pain in his left ankle all the time, especially when the weather changed or it was cold. Id. Dr. Ganesh found no abnormality in Aregano's spine, and a full range of motion in his extremities, including shoulders, ankles, and wrists. Id. at 285. A subsequent x-ray of Aregano's left ankle by Dr. Pesho S. Kotval, M.D., Ph.D., found a small avulsed body distal to the top of the medial malleolus, but no soft tissue swelling. Id. at 287. Radiographically, the ankle was unremarkable. Id. Dr. Ganesh concluded that with "[v]ery limited information available from [Aregano]," he found "no gross physical limitation . . . to sitting, standing, walking, or use of upper extremities." Id. at 286.

##### 2. Mental Impairments

The state disability office made several unsuccessful attempts to secure records of Aregano's psychiatric care. A request for records from Madison County Mental Health was

6

answered with a notation that Aregano received no services in 2005 or 2006.  Id. at 274.  A request of the Onondaga County Correctional Medical and Behavioral Health Services in Syracuse, New York was returned with a notation that the records requested had been destroyed as the facility "only keep[s] records for fifteen years."[5]  Id. at 273.

### a.   Treating Physician

Aregano was treated at the Oneida Indian Nation, seeing Dr. Thomas Schwartz, M.D. ("Dr. Schwartz"), and a licensed mental health social worker.   Id. at 224.   In the earliest available record, Dr. Schwartz treated Aregano for Anxiety Disorder NOS and Personality Disorder NOS.[6]  Id. at 232-33.  Initially, Dr. Schwartz prescribed Prozac.  E.g., id. at 232 (noting that Aregeno felt Prozac was "somewhat helpful" in September 2006). After Aregano stopped taking Prozac because "it was slowing him down," Dr. Schwartz prescribed Abilify in January 2007.  Id. at 229-30.

Aregano also has medical records of treatment from a

---

[5] The correspondence from Onondaga County Correctional Medical and Behavioral Health Services was dated February 28, 2007.  Admin. R. 273.  In 2007, Aregano was twenty-nine years old, so either Aregano was a younger teenager when treated, or the correctional facility erred in claiming that the records had been destroyed.

[6] Dr. Schwartz's notes from September 6, 2006 indicate that he had previously examined Aregano.  Admin. R. 232 (noting, e.g., that patient was "[m]uch more open today").

correctional facility.  At the Central New York Psychiatric
Center, Aregano received a screening on March 23, 2009 and March
29, 2008, and was diagnosed with adult antisocial behavior.  Id.
at 335, 337 (citing the Diagnostic and Statistical Manual of
Mental Disorders, 4th Ed., ("DSM-IV") codes V71.09).  He was
admitted as an outpatient on April 9, 2009, and then diagnosed
with antisocial personality disorder, mood disorder, and
polysubstance abuse.  Id.  A month later, he was screened again
and removed from outpatient care.  Id.  In July, he was admitted
to outpatient care again with the same diagnosis as in April.
Id.  Each time he was admitted for care, he was upgraded to
"Level 3" treatment, which means the patient "[n]eeds/may need
short-term chemotherapy for disorders such as anxiety, moderate
depression, or adjustment disorders, OR suffers from a mental
disorder which is currently in remission and can function in a
dormitory facility which has part-time Mental Health staff."  Id.
at 334.

### b.  Consulting Physicians

Dr. Jeanne A. Shapiro, Ph.D. ("Dr. Shapiro"), conducted a
consultative examination of Aregano on March 22, 2007.  Id. at
278-82.  After recording his medical history, Dr. Shapiro found
that Aregano was fully oriented but that "[h]is attention and
concentration was mildly impaired possibl[y] due to past head
trauma."  Id. at 280.  Dr. Shapiro observed that Aregano's

8

thought process was coherent, goal oriented, and showed no evidence of disordered thinking.  Id.  Aregano had difficulty with subtraction and serial threes.  Id.  His memory skills were mildly-moderately impaired, and he was able to recall three objects immediately and one after two minutes, restate four digits forward, and two digits backwards.  Id.  Dr. Shapiro estimated that Aregano's intellectual functioning was "in the deficient range."  Id. at 281.

Dr. Shapiro reported that Aregano had anger problems and that he stated he lost jobs "because sometimes he does not want to go and because work bores him."  Id. at 279.  Aregano reported being able to dress, bathe, groom himself, cook, shop, and drive.  Id. at 281.  Dr. Shapiro concluded that he was "incapable of managing money because of poor calculation skills and other cognitive deficits."  Id.  In her medical source statement, Dr. Shapiro noted that Aregano appeared "capable of understanding and following simple instructions and directions," but "may have difficulty with more complex tasks."  Id.

Dr. Shapiro concluded that "It is clear that he will have difficulty interacting appropriately with others, consistently maintaining attention and concentration, and learning some tasks, but is difficult to know to what to attribute this."  Id.  Dr. Shapiro did not diagnose Aregano with any impairments other than alcohol and cannabis abuse in remission, instead noting that

Cognitive Disorder NOS secondary to head trauma, Impulse Control Disorder NOS, Mild Mental Retardation and Personality Disorder NOS needed to be ruled out. Id. She recommended that Aregano be reevaluated later and that his prognosis was uncertain pending further evaluation. Id. at 282. At the time of the consultative exam, Aregano had been prescribed Risperdal, but was refusing to take it. Id. at 279.

Another medical consultant, R. Nobel[7] ("Nobel") reviewed the record and completed a Psychiatric Review Technique. Id. at 289-302. Nobel found a traumatic brain injury, anxiety NOS disorder, and polysubstance abuse "reported to be in remission." Id. at 290, 294, 297. For the "B" criteria of the Listings, Nobel found mild restrictions of daily living activities, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace. Id. at 299. With regard to repeated episodes of deterioration, each of extended duration, Nobel found "insufficient evidence" to determine the degree of limitation. Id. For the "C" criteria of listings 12.02 or 12.06, Nobel found that the evidence did not establish the presence of "C" criteria. Id. at 300.

In the subsequent mental residual functional capacity

---

[7] Neither the record or hearing officer's decision states Nobel's medical qualifications, and he or she printed his or her name on the Psychiatric Review Technique as "Nobel, R., Psychology." Admin. R. 289.

assessment, Nobel found that Aregano was not significantly limited in his ability to remember locations and work-like procedures, the ability to understand and remember very short and simple instructions, the ability to carry out very short and simple instructions, the ability to make simple work related decisions, the ability to ask simple questions or request assistance, the ability to be aware of normal hazards and take appropriate precautions, or the ability to travel in unfamiliar places. Id. at 303-04. In the thirteen other areas of mental function evaluated, Nobel found that Aregano was moderately limited. Id. In the part III functional capacity assessment, Nobel summarized the evidence of Aregano's mental limitations and concluded that he "seems capable of entry level [substantial gainful activity] in setting [sic] requiring no more than brief an[d] s[u]perficial contact with others." Id. at 305.

### c. Aregano's Testimony

In his interview with the hearing officer, Aregano testified about his mental limitations. E.g., id. at 27, 36. Aregano also commented on his problems "getting along with people" stating "different people I have different problems with." Id. at 29. Aregano stated that "I don't always have a problem with everybody, . . . but some people just, they upset me and make me mad. And some people I seem to upset." Id. at 30. Aregano also testified that he has had difficulty holding jobs. E.g., id. at

11

37-38.  When asked if he does his job, Aregano replied
"[u]sually" and explained that he "did it most of the time
though.  Like sometimes, I forget things.  I forget what to do,
what I have to have done, and things like that."  Id. at 27.
Aregano reported being fired from a carpentry job as a laborer
because "the other guys worked better and more efficient and then
they can't pay me for that."  Id. at 28 (adding "But I don't know
why, I don't think they liked me").  Aregano also testified that
he cannot keep a job because his supervisors find him lazy,
inefficient, id. at 27, or because sometimes he did not want to
go to work, id. at 39.

    At one point, Aregano worked at a casino, where a family
friend reportedly helped keep him out of trouble.  Id. at 37 ("So
he used to, he used to keep me out of trouble and stuff and he's
a good guy.  But then I went from the warehouse and I was in
facilities and he fired [sic], they told me that I was in trouble
and then they suspended me a couple of times."); id. at 38 ("Like
I said, Jimmy Devereaux, he took care of me because I was in
arguments with the supervisors and he would, he would fix it.").
Aregano then worked as a card dealer at the casino, but was told
he was "too slow."  Id. at 38 ("[The boss] said why in the fuck
are you so slow, la, la, la, and I was like listen. I was in car
accident.  You know, I go as fast as I can and he said well,
you're playing the wrong people and stuff.").

12

With regards to his psychiatric care, Aregano reported visual hallucinations while incarcerated, but reported that he had not "heard nothing or seen nothing for a long time, for like a year." Id. at 43.  He reported being on Remeron[8] while incarcerated, but that it made him cry.  Id.  Later he was on Seroquel[9], which made him "real sleepy." Id. at 44.  Aregano said that he had not been to a doctor at his present correctional facility because it is not a mental health facility.  Id. at 21. He was apparently offered an institutional transfer to see a mental health doctor, but he testified that he did not want to move because he was close to his family.  Id.

### 3.  Substance Abuse

Aregano has a long history of substance abuse starting with marijuana when he was nine years old.  Id. at 226.  He also started using alcohol at the age of nine, and on a regular basis at the age of thirteen.  Id.  He used cocaine for the first time at the age of fourteen.  Id.  His longest period of abstinence was from April 14, 1998 to April 2003, when he relapsed and used alcohol, marijuana, and cocaine.  Id.  In August 2003, a licensed

---

[8] Remeron is an antidepressant. Mirtzapine, PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000995/ last revised April 13, 2012).

[9] Seroquel is an atypical antipsychotic. Quetiapine, PubMed Heath, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001030/ (last revised May 16, 2011).

clinical social worker with an "R" privilege for psychotherapy[10] diagnosed Aregano with Polysubstance Dependence. Id. at 227. Aregano entered an inpatient facility for substance abuse for eighteen days in 2003. Id. at 225.

In his initial assessment at the Oneida County Correctional Facility on September 17, 2006, Aregano reported using a variety of illegal drugs including cocaine, heroine and marijuana, as well as alcohol. Id. at 220. Aregano admitted taking illegal drugs as recently as two months before that intake. Id. at 220.

## II.  LEGAL STANDARDS

### A.  Standard of Review

The Court's role in reviewing a social security disability case is to determine whether appropriate legal standards were applied and assess whether the administrative officer's findings of fact are supported by substantial evidence. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996).  The Court should only set aside an administrative decision "where it is based upon legal error, or is not supported by substantial evidence." Roma v. Astrue, No. 10-4351-cv, 2012 WL 147899, at *1 (2d Cir. Jan. 19, 2012) (not for publication) (quoting Rosa v. Callahan, 168 F.3d 72, 77

---

[10] The "R" Privilege is reserved for a licensed clinical social worker "who fulfills the requirements of the insurance law for supervised experience providing psychotherapy, is recognized in New York State as a reimbursable psychotherapist." License Requirements, Office of the Professions, http://www.op.nysed.gov/prof/sw/lcswprivilege.htm (last visited on April 18, 2012).

14

(2d Cir. 1999)).  "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Moran</u> v. <u>Astrue</u>, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). "'[W]here there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards,' the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence."  <u>Jaskiewicz</u> v. <u>Commissioner of Social Sec.</u>, No. 3:08-CV-379, 2010 WL 5138477, at *2 (N.D.N.Y. Dec. 10, 2010) (quoting <u>Martone</u> v. <u>Apfel</u>, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing <u>Johnson</u> v. <u>Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987))).  The court may not "affirm an administrative action on grounds different from those considered by the agency."  <u>Burgess</u> v. <u>Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008) (quoting <u>Melville</u> v. <u>Apfel</u>, 198 F.3d 45, 52 (2d Cir. 1999)).

**B.  Social Security Disability Standard**

For Supplemental Security Income eligibility, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); <u>accord</u> <u>Petrie</u> v. <u>Astrue</u>, 412 F. App'x. 401, 404 (2d Cir. 2011);

Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004).  The
impairment must be "of such severity that [the claimant] is not
only unable to do his previous work but cannot, considering his
age, education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy."
Petrie, 412 F. App'x. at 404 (quoting 42 U.S.C. §§ 423(d)(2)(A),
1382c(a)(3)(B)).

     To ascertain whether a claimant has a disability, the Second
Circuit uses the Social Security Administration's five-step
analysis based upon 20 C.F.R. § 404.1520 and § 416.920 for
evaluating disability claims:

> In essence, if the Commissioner determines (1) that the
> claimant is not working, (2) that he has a 'severe
> impairment,' (3) that the impairment is not one [listed
> in Appendix 1 of the regulations] that conclusively
> requires a determination of disability, and (4) that the
> claimant is not capable of continuing in his prior type
> of work, the Commissioner must find him disabled if (5)
> there is not another type of work the claimant can do.

Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)
(quoting Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002)).
The claimant bears the burden of proof on the first four steps,
Burgess, 537 F.3d at 128, while the Commissioner bears the burden
on the last step, e.g., Rosa, 168 F.3d at 78.  The Social
Security Act "must be liberally applied, for it is a remedial
statute intended to include not exclude."  Moran, 569 F.3d at 112
(citation omitted).

     **C.   Hearing Officer Decision**

16

In his findings of fact and conclusions of law, the hearing officer concluded that Aregano had not engaged in substantial gainful activity since January 10, 2007 – his date of application for SSI benefits. <u>Id.</u> The hearing officer found that Aregano has severe impairments including traumatic brain injury, anxiety disorder, personality disorder, and substance abuse in remission. <u>Id.</u> at 12. In a brief summary of Aregano's mental impairments, the hearing officer documented only one examination by Dr. Schwartz, the treating physician, and his diagnosis of anxiety disorder and personality disorder. <u>Id.</u> The hearing officer noted that Dr. Shapiro consultatively examined Aregano, but did not diagnose the claimant other than with substance abuse in remission.[11] <u>Id.</u> He credited Aregano's testimony that he was not depressed and did not have any significant manic or anxiety related symptoms or symptoms of a formal thought disorder. <u>Id.</u> at 13. The hearing officer noted that Aregano had a long history of alcohol and drug use, but concluded that it was in remission. <u>Id.</u>

As to Aregano's alleged back, shoulder, hand, and ankle pain, the hearing officer concluded that Aregano had no severe physical impairments. <u>Id.</u> He documented Aregano's prescription for Hydrocodone, and subsequent attempts to get early refills.

---

[11] The hearing officer failed to note that Dr. Shapiro's recommendation and prognosis was that Aregano needed to be reevaluated. Admin. R. 282.

Id.  The hearing officer did not include medical opinions from
Aregano's treating physicians, but assigned "great weight" to the
opinion of Dr. Ganesh, the consulting examining physician.  Id.
The hearing officer stated that Dr. Ganesh placed no limitations
on Aregano.[12]  Id.   The hearing officer assigned some weight to
the non-medical opinion of a Disability Analyst who determined
that Aregano did not have a severe impairment because there was
no more than a slight abnormality of physical function.  Id.  The
hearing officer noted that Aregano testified to minimal physical
problems and that no medical laboratory findings showed an
impairment to his back, hand or ankle.  Id.  In conclusion, the
hearing officer found that Aregano had no medically determinable
impairment in his back, hand, or ankle, and that this shoulder
impairment did not more than minimally affect the claimant's
ability to engage in basic work activity.  Id.

At step two of the disability analysis, the hearing officer
concluded that none of Aregano's impairments met or medically
equaled one of the listed impairments in 20 C.F.R. Part 404,
Subpart P, Appendix 1.  Id.  The hearing officer considered
Listings for Organic Mental Disorders (12.02), Anxiety Related
Disorders (12.06), Personality Disorders (12.08), or Substance

---

[12] Dr. Ganesh concluded that with "very limited information
available from [Aregano], he found "no gross physical limitation
. . . to sitting, standing, walking or use of upper extremities."
Admin. R. 286.

18

Abuse Disorders (12.09).  Id.  The hearing officer adopted
Nobel's report that Aregano had mild restrictions in the
activities of daily living, and moderate difficulties in social
functioning, and concentration, persistence, or pace.  Id. at 14.
The hearing officer's conclusions about limitations on daily
functioning were based on Aregano's description of his daily
activities to examining consultant Dr. Shapiro.  Id. (noting that
Aregano obtained many college credits and lost some jobs due to
not going to work).

Although the hearing officer acknowledged that Nobel found
insufficient evidence to determine whether Aregano had episodes
of decompensation, the hearing officer determined that there were
no episodes of decompensation, each of extended duration.  Id.
The hearing officer stated that Aregano had no psychiatric
hospitalizations, and "very little outpatient psychiatric
treatment."  Id.  In the absence of marked limitations or
episodes of decompensation, the hearing officer concluded that
the paragraph B criteria did not apply, meaning that Aregano
could not meet the requirements of listings 12.02, 12.06, 12.08,
12.09 unless paragraph C criteria were satisfied.  Id.  The
hearing officer also considered the paragraph C criteria and
found that the evidence failed to establish those criteria
because Aregano had no psychiatric hospitalizations.  Id. at 15.

At step four, the hearing officer found that Aregano had the

residual functional capacity to perform the full range of work at all exertional levels but with non-exertional limitations.  Id. He concluded that Aregano's statements concerning the intensity, persistence, and limiting effects of his mental symptoms were not credible to the extent they were inconsistent with his residual functional capacity assessment.  Id.  The hearing officer noted that "Dr. Shapiro could not diagnosed [sic] the claimant with a mental impairment because he was so vague about any symptoms."[13] Id.  The hearing officer also relied on Aregano having "minimal psychiatric outpatient treatment," his Global Assessment Functioning score of 60 – "indicating moderate symptoms" - and Aregano's statements that he would look for work, and could do various jobs, including raking leaves.  Id. at 15-16.  In particular, Aregano stated that he wanted to go back to work at a cigarette factory because "he could do anything he wanted there, including go in at any time."  Id. at 16.  The hearing officer discredited Aregano's allegations of personality change due to traumatic brain injury, noting that he had "anger issues since childhood[,] was arrested prior to his motor vehicle accident," and was discharged from rehabilitation with "minimal cognitive-linguistic deficits." Id.

---

[13] Dr. Shapiro was not able to diagnose Aregano but concluded that "[i]t is clear that [Aregano] will have difficulty interacting appropriately with others, consistently maintaining attention and concentration, and learning some tasks, but is difficult to know what to attribute this to."  Id. at 281-82

The hearing officer also put "great weight" on the opinion of the medical consultant Nobel, who concluded that Aregano seemed capable of entry-level work in a setting "requiring no more than brief and superficial contact with others."  Id.

After considering Aregano's age, education, work experience, and residual functional capacity, the hearing officer concluded that jobs exist in significant numbers in the national economy that Aregano could perform.  Id.  The hearing officer cited Social Security Ruling 85-15 for cases where the claimant has only non-exertional impairments, and noted that Aregano's "ability to perform work at all exertional levels has been compromised by non exertional limitations."  Id. at 17.  He concluded that Aregano's "limitations have little or no effect on the occupational base of unskilled work at all exertional levels," and therefore that Aregano was not disabled.  Id.

## III. ANALYSIS

Aregano appeals four separate issues.  Pl.'s Tr. Br. 2.  The Court will address the issues in logical order.

### A.  Substantial Evidence Supports the Hearing Officer's Credibility Determination

Aregano argues that the hearing officer erred in weighing the credibility of Aregano's testimony with regard to his mental limitations.  Id. at 7.  In determining credibility, the hearing officer must make findings that are "consistent with the medical and other evidence."  Williams on Behalf of Williams v. Bowen,

859 F.2d 255, 261 (2d Cir. 1988).  A finding that the witness is
not credible must be explained "with sufficient specificity to
permit intelligible plenary review of the record."  Id. at 260-61
(citing Carroll v. Secretary of Health and Human Servs., 705 F.2d
638, 643 (2d Cir. 1983)).  Here, the hearing officer concluded
that Aregano's statements were only partially credible, and he
did not credit the "intensity, persistence and limiting effects
of [his] symptoms."  Admin. R. 15.  The Court will examine the
evidence supporting this determination in each functional area in
turn.

     Aregano testified that his left leg "hurts bad and [he]
can't do a lot of things," id. at 33, however, in the areas of
activities of daily living, the hearing officer concluded that
Aregano had only mild limitations, id. at 14.  As the hearing
officer noted in his decision, Aregano reported to Dr. Shapiro
being able to accomplish some tasks of daily living.  Id.
Aregano can drive, cook, shop, dress, and groom himself, id.
(citing id. at 281), and he watches television, id. at 30-32.
The psychology consultant concluded that Aregano had mild
restrictions in daily activities.  Id. at 299.  Accordingly, the
hearing officer's finding was supported by substantial evidence.

     Aregano testified about having problems getting along with
others.  Id. at 29.  In the area of social functioning, the
hearing officer concluded that Aregano had moderate difficulties.

Id. at 14.  The hearing officer noted that he must socialize to some extent because he has three children and at one point had a girlfriend.  Id.  Aregano's speech intelligibility was fluent, and his receptive and expressive language was adequate at his consultative exam.  Id.  Although he testified about his difficulty holding jobs, he left the job he held the longest (a casino) because he "decided not to go to work one day."  Id. at 37-38.  Although Aregano introduced much evidence of his problems in social functioning, the hearing officer's credibility determination is consistent with medical evidence to the extent that his determination is the same as that of the reviewing consultant.  See id. at 14, 299.  Therefore, substantial evidence supports the hearing officer's finding.  See e.g., Moran, 569 F.3d at 112.

In the area of maintaining concentration, persistence, or pace, the hearing officer found that Aregano had moderate limitations.  Admin. R. 14.  The hearing officer noted that Dr. Shapiro found Aregano's thought process was "coherent and goal-directed," fully oriented, his attention and concentration were mildly impaired, and his memory was mildly to moderately impaired.  Id.  Aregano also attended college after the accident and obtained a number of credits.  Id. at 38-39.  In addition, the psychology consultant Nobel concluded that Aregano was

moderately limited in this area.[14]  Id. at 299.  As this is "more
than a mere scintilla" of evidence, this Court will affirm the
hearing officer's credibility determination.  Moran, 569 F.3d at
112 (citations omitted).

The hearing officer also determined that Aregano had no
episodes of decompensation of extended duration.  Admin. R. 14.
In May 2007, based on a review of the existing record, the
psychology consultant concluded that there was insufficient
evidence of episodes of decompensation.  Id. at 299.  Mental
health medical records from a correctional institution were added
to the administrative record after Nobel's evaluation of Aregano.
See id. at 328-368.  The hearing officer concluded that Aregano
"had no psychiatric hospitalizations and very little outpatient
psychiatric treatment."[15]  Id. at 14.  The treatment records from

_____

[14] Listing 12.00 defines marked limitations:

Where we use "marked" as a standard for measuring the
degree of limitation, it means more than moderate but
less than extreme. A marked limitation may arise when
several activities or functions are impaired, or even
when only one is impaired, as long as the degree of
limitation is such as to interfere seriously with your
ability to function independently, appropriately,
effectively, and on a sustained basis. See 20 C.F.R. §§
404.1520a and 416.920a.

20 C.F.R. Part 404, subpart P, App'x 1 12.00C.

[15] The Court disagrees that a claimant seeing mental health
professionals over a period of years while being prescribed drugs
such as Prozac, Abilify, Risperdal, Remeron and Seroquel could be
aptly characterized as having "very little outpatient psychiatric
treatment." See, e.g., Admin. R. 14, 229, 278.  Undoubtedly

the Central New York Psychiatric Center showed that Aregano was

admitted several times for outpatient services, but the records

do not show any hospitalizations.  Id. at 334.  Substantial

evidence supports the hearing officer's finding that Aregano has

not experienced repeated episodes of decompensation.

> **B.   The Hearing Officer Failed to Justify His Findings for Listing 12.02C**

Aregano argues that the hearing officer incorrectly applied

the standards from the Listings of Impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1.  Pl.'s Tr. Br. 5-6.  At step three of

the disability analysis, the hearing officer may grant disability

benefits to claimants whose disabilities meet the criteria in the

Listing of Impairments in 20 C.F.R. Part 404 Subpart P, Appendix

1.  20 C.F.R. § 416.920(a)(4)(iii).  The claimant bears the

burden at this step of the disability process.  Burgess, 537 F.3d

at 128.  The listed impairments are considered severe enough to

prevent an individual from doing any gainful activity.  Id. at §

416.925(a).  "For a claimant to show that his impairment matches

a listing, it must meet all of the specified medical criteria."

Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  "An impairment

that manifests only some of those criteria, no matter how

severely, does not qualify."  Id. (citing SSR 83-19).  An

---

Aregano's history of periodic incarceration has likely impacted
his treatment history - it ought not, however, minimize the
diagnoses of severe mental impairments found by the examining
medical sources.

impairment may also be "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  The regulations set out the procedure for a hearing officer to find that a claimant's medical problems are equivalent to the Listing.  Id. at § 416.926(b).  Although a claimant may be granted benefits at step three, a claimant who fails to meet the Listing is not denied benefits, but instead the hearing officer must proceed to step four.  See id. at § 416.920(e).

In his written decision, the hearing officer considered Listings for Organic Mental Disorders (12.02), Anxiety Related Disorders (12.06), Personality Disorders (12.08), or Substance Addiction Disorders (12.09).  Admin. R. 13-14.  The Court treats each of these separately, and affirms the hearing officer's conclusions with regards to 12.06 and 12.08.  Part B for Listing 12.06 and 12.08 requires "at least two" of the listed restrictions, or "repeated episodes of decompensation, each of extended duration."  As reviewed in Section III.A above, the hearing officer adequately found no marked limitations and no episodes of decompensation and therefore Aregano could not meet the listings under Part B.

Listing 12.09 for Substance Addiction Disorders is a "reference listing," and is evaluated using the requirements of other listings, including organic mental disorders (12.02),

anxiety disorders (12.06), and personality disorders (12.08).
"[A]n individual shall not be considered to be disabled . . . if
alcoholism or drug addiction would . . . be a contributing factor
material to the Commissioner's determination that the individual
is disabled."  42 U.S.C. § 1382c(a)(3)(J).  For Listing 12.09 to
apply, the Commissioner must find the claimant would be disabled
if he stopped using drugs or alcohol.  Gordon v. Commissioner of
Social Sec., slip op., No. 3:10-cv-00124 NPM, 2012 WL 669854, at
*3 (N.D.N.Y. Feb. 29, 2012) (citing Hernandez v. Astrue, 814 F.
Supp. 2d 168, 181 (E.D.N.Y 2011)).

    For Listing 12.02, Organic Mental Disorders, the required
level of severity is met when the requirements of both paragraph
A and B are satisfied, or when the requirements in paragraph C
are satisfied.  Aregano's limitations do not meet paragraph B for
the same reasons as those in Listings 12.06 and 12.08 - the
hearing officer found that he does not have marked limitations or
repeated episodes of decompensation.

    Paragraph C, however, stands alone, and bears further
scrutiny.  Under paragraph C, a claimant is disabled if he has a:

> Medically documented history of a chronic organic mental
> disorder of at least 2 years' duration that has caused
> more than a minimal limitation of ability to do basic
> work activities, with symptoms or signs currently
> attenuated by medication or psychosocial support, and one
> of the following:
>
> 1. Repeated episodes of decompensation, each of extended
> duration; or
> 2. A residual disease process that has resulted in such

marginal adjustment that even a minimal increase in
mental demands or change in the environment would be
predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to
function outside a highly supportive living arrangement,
with an indication of continued need for such an
arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1 Listing 12.02C.

Aregano has a medically documented history of a chronic

organic mental disorder for more than two years due to a

traumatic brain injury.  The hearing officer also concluded that

Aregano had a moderate limitation in social functioning,

including work activities.  Admin. R. 14.  Nonetheless, the

hearing officer concluded that paragraph C did not apply.  Id. at

15 ("In this case, the evidence fails to establish the presence

of the 'paragraph C' criteria.").  The hearing officer stated

that "he considered whether the 'paragraph C' criteria of 12.02,

12.06, 12.08 and 12.09 are satisfied."[16]  Id.  The only medical

evidence offered by the hearing officer was that Aregano "had no

psychiatric hospitalizations."  Id.

A hearing officer "must set forth the crucial factors

justifying his findings with sufficient specificity to allow a

court to determine whether substantial evidence supports the

decision."  Gravel v. Barnhart, 360 F. Supp. 2d 442, 444–45

(N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587

---

[16] The hearing officer committed immaterial legal error here.
Admin. R. 15.  Listings 12.08 and 12.09 do not have paragraph C
criteria.

(2d Cir. 1984)); accord McCallum v. Comm'r of Soc. Sec., 104 F.3d
353 (2d Cir. 1996) (noting that in "situations in which there was
either no evidence or substantial conflicting evidence in the
record . . . . the [hearing officer] must make specific factual
findings in order to facilitate meaningful judicial review). But
see Berry v. Schweiker, 675 F.2d 464, 467-67 (2d Cir. 1982)
(upholding hearing officer decision that failed to include a
specific rationale because the hearing officer's decision and
record contained substantial evidence).  Here, the hearing
officer did not justify his findings with any evidence at all
beyond the lack of hospitalizations.  The paragraph C criteria
have three independent factors, each of which could result in a
finding of disability for Aregano.  Listing 12.02C.  The hearing
officer addressed only one of these factors, and did not include
any evidence or discussion of the other factors.  Admin. R. 15.
Even where the hearing officer's ultimate conclusion is
potentially supportable, the Court ought not affirm a decision
where there is a reasonable basis for doubting whether the
appropriate legal standards were applied.  Jaskiewicz, 2010 WL
5138477, at *2 (quoting Martone, 70 F. Supp. 2d at 148 (citing
Johnson, 817 F.2d at 986) (noting that "'where there is a
reasonable basis for doubting [the application of] the
appropriate legal standards,' the decision should not be affirmed
even though the ultimate conclusion reached is arguably supported

by substantial evidence"); see Berry, 675 F.2d at 469 (noting that "in future cases in which the disability claim is premised upon one or more listed impairments of Appendix 1, the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment").  As a result, the Court remands to the administrative agency the issue whether the record evidence supports the Listing 12.02C criteria.

As discussed above, Listing 12.09 may apply only if another listing is met.  Therefore, if on remand the hearing officer finds that Listing 12.02 is met, the Commissioner must properly evaluate Listing 12.09 as well, supporting the finding by substantial evidence.[17]

### C.    The Hearing Officer Erred in Not Consulting a Vocational Expert

At the final step of the sequential analysis, the Commissioner will determine whether a claimant who cannot do past relevant work can make an adjustment to other work.  20 C.F.R. § 416.920(a)(4)(v).  The hearing officer will consider the claimant's residual functional capacity (as determined at Step Four), age, education, and work experience.  Id.  If the claimant can make an adjustment to other work, he is not entitled to disability benefits.  Id.  If he cannot adjust, the hearing

---

[17] In the present decision, the hearing officer did not discuss his findings that Listing 12.09 did not apply, presumably because he concluded that none of the prerequisite disorders applied.  Admin. R. 14-15.

officer will find him disabled.  <u>Id.</u>

The Commissioner bears the burden of proof at this step of the disability determination.  <u>Burgess</u>, 537 F.3d at 128.  To efficiently issue decisions and avoid expert testimony in every case, administrative officers frequently rely on the Medical-Vocational Guidelines ("the Grid") to determine whether claimants can adjust to other work and therefore do not have a disability. <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix 2.  The Grid reflects "the major functional and vocational patterns . . . in cases whic cannot be evaluated on medical considerations alone."  <u>Id.</u> at 200.00(a).  "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."  <u>Id.</u>  If the hearing officer's findings of fact do not correspond with a particular rule in the Grid, the Grid does not direct a conclusion of disabled or not disabled.  <u>Id.</u>

Generally, the "appropriateness of 'applying the grid guidelines and the necessity for expert testimony must be determined on a case-by-base basis.'"  <u>Webb</u> v. <u>Astrue</u>, slip op., No. 3:11-CV-94 (GLS), 2012 WL 589660, at *5 (N.D.N.Y. Feb. 22, 2012) (quoting <u>Bapp</u> v. <u>Bowen</u>, 802 F.2d 601, 605 (2d Cir. 1986)). The Grid, however, does not take into account a claimant's non-

exertional impairments, and therefore "the [hearing officer] should consult with a vocational expert before making a determination as to disability." Id.  In short, when a claimant has a non-exertional impairment that significantly limits the range of work permitted by his exertional limitations, the Social Security Administration may not apply the Grid.  E.g., Rosa, 168 F.3d at 82; Bapp, 802 F.2d at 605; Comins v. Astrue, No. 5:05-CV-556 (FJS/GHL), 2009 WL 819379, at *8 (N.D.N.Y. Mar. 26, 2009)(quoting Dwyer v. Apfel, 23 F. Supp. 2d 223, 229-30 (N.D.N.Y. 1998)), aff'd by, 374 F. App'x 147 (2d Cir. 2010) ("When 'a claimant's nonexertional impairments significantly diminish (his or) her ability to work, the Commissioner should be required to present the testimony of a vocational expert or other evidence concerning the existence of jobs in the national economy for an individual with claimants limitations.'").  Still, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grid.  Bapp, 802 F.2d at 603; Lefever v. Astrue, slip op., No. 5:07-CV-622(NAM/DEP), 2010 WL 3909487, at *17 (N.D.N.Y. Sept. 30, 2010).

     For example in Lefever, 2010 WL 3909487, at *17, a district judge affirmed a disability denial made without vocational expert testimony where the claimant had mental limitations.  Unlike this case, however, in Lefever there was "no evidence in the record

that plaintiff's mental impairments limited her capacity for work." Id. Here, Aregano's limitations cannot be assumed to have no significant impact on his ability to work. The hearing officer concluded that Aregano had moderate limitations with regard to social functioning, concentration, persistence, or pace. Admin. R. 14. The consultative examiner, Dr. Shapiro, concluded that Aregano "appears to be incapable of managing money because of poor calculation skills and other cognitive deficits." Id. at 282. In addition, Aregano testified to concrete examples of his mental limitations negatively impacting multiple jobs that he held - in each case leading to his termination. Id. at 27, 37-38. Although the hearing officer found that Aregano's testimony was not credible to the extent it conflicted with the hearing officer's residual capacity determination, id. at 15, the record in this case is quite distinct from Lefever.

As these case-by-case determinations can be difficult when claimants have mental limitations,[18] the Social Security

_____

[18] When a claimant has a medically determinable mental impairment, the hearing officer must rate the functional limitations resulting from the impairment in four functional areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 416.920a(c)(3). A claimant's impairments are considered severe if they result in limitations other than "none" or "mild" in the first three functional areas. Id. at § 416.920a(d)(1). For severe mental limitations that do not meet the requirements of a Listing, the hearing officer assesses the residual functional capacity. Id. at § 416.920a(d)(3).

Administration promulgated guidelines and examples illustrating
when a non-exertional limitation "significantly limits" a
claimant's range of work.  SSR 85-15, 1985 WL 56857, at *4
("There has been some misunderstanding in the evaluation of
mental impairments.").  The hearing officer "must not assume that
failure to meet or equal a listed mental impairment equates with
capacity to do at least unskilled work."  <u>Id.</u>  In determining
whether a mentally impaired claimant may still do unskilled work,
the hearing officer must consider the basic mental demands of
such work: which "include the abilities (on a sustained basis) to
understand, carry out, and remember simple instructions; to
respond appropriately to supervision, coworkers, and usual work
situations; and to deal with changes in a routine work setting."
<u>Id.</u>  This Court is also persuaded that Aregano's nonexertional
limitations ought have been presented to a vocational expert
because his case closely matches an example proposed in Social
Security Ruling 85-15 to demonstrate when a substantial loss of
ability to perform basic work related activities would justify a
finding of disability:

> Example 1: A person whose vocational factors of age,
> education, and work experience would ordinarily be
> considered favorable (i.e., very young age, university
> education, and highly skilled work experience) would have
> a severely limited occupational base if he or she has a
> mental impairment which causes a substantial loss of
> ability to respond appropriately to supervision,
> coworkers, and usual work situations.  A finding of
> disability would be appropriate.

SSR 85-15.  The hearing officer found that Aregano was a "younger age individual," completed a G.E.D., and earned college credits, but did not have past relevant work experience.  Admin. R. 16. The hearing officer gave great weight to the reviewing consultant who opined that Aregano "seemed capable of entry level substantial gainful activity in a setting requiring no more than brief and superficial contact with others."  Id.

While Aregano's limitations with social interaction and adaption did not meet the requirements of the Listings, the Social Security Ruling explicitly flags such cases as potentially meriting disability anyway - when the limitations in question are non-exertional and affect the basic demands of work.  SSR 85-15. The opinion of the reviewing consultant to whom the hearing officer gave "great weight" suggests that Aregano may be precisely the sort of claimant that merits additional analysis to determine disability.  See Admin. R. 304.  Nobel observed that in the functional capacity of Social Interaction, Aregano was moderately limited in four of five abilities, and only "not significantly limited" in the ability to ask simple questions or request assistance.  Id.  In the functional area of adaption, he was moderately limited in the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others.  Id.

Like the example from Social Security Ruling 85-15, these

limitations show a "substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations."   The Commissioner bears the burden of proof at this step of the disability determination, <u>Burgess</u>, 537 F.3d at 128, and the hearing officer ought to have requested the testimony of a vocational expert to determine whether Aregano was disabled instead of applying the Grids, <u>Rosa</u>, 168 F.3d at 82.   This Court remands the issue to the Administration with instructions that a vocational expert be consulted on whether there are jobs in significant numbers in the national economy that Aregano can perform.

**D.   Other Legal Standards**

Aregano also argues generally that the hearing officer used incorrect legal standards in assessing his claim.  Pl.'s Tr.  Br. 2.  Having thoroughly reviewed the administrative record and the hearing officer's decision, this Court notes no other legal errors.

**IV.   CONCLUSION**

Wherefore, for the foregoing reasons, it is hereby

ORDERED that the Commissioner's decision denying SSI benefits is REVERSED in part; it is further

ORDERED that this case is REMANDED to the hearing officer for further evaluation of whether Listing 12.02C applies to Aregano, and if not, with instructions that a vocational expert be consulted at step five of the disability process in determining whether Aregano is disabled.

**IT IS SO SO ORDERED.**

**Dated:** July 30, 2012

　　　　　　　　　　　　　　　　 /s/ William G. Young　　　
　　　　　　　　　　　　　　　　**William G. Young**
　　　　　　　　　　　　　　　　**U.S. District Judge**